REDMANN, Judge.
The contractor on a road project and a subcontractor appeal from a judgment against the contractor, with judgment over against the subcontractor for contribution of half, for injuries to an automobile driver who ran into a mound of sand placed across the roadway.
Issues are contributory negligence, quantum, and liability as between contractor and subcontractor.
The roadway, a continuation of the eastward lanes of West Esplanade Avenue in Jefferson Parish from Roosevelt Boulevard to Power Boulevard, had been completed and was to have been inspected for acceptance by the parish on May 4, 1976. While the roadway was still under construction, a comparatively low mound of sand had been placed across West Esplanade, a few feet east of Power, to prevent use of the uncompleted roadway, although much had been dispersed before May 4. There is testimony that wooden barricades were also used. Because of the intended May 4 inspection, the contractor had the sand (and barricades?) removed. The May inspection was postponed. The contractor’s president testified that some Parish employee ordered the placement of a high mound of sand to prevent use of the roadway by the public until accepted, and he ordered the subcontractor to dump sand (and, he said, to place lighted, wooden barricades) across the roadway. The subcontractor did dump the sand but, its president testified, it did not place barricades because it was not asked to.
*1330 Meanwhile, two or three nights before running into the sand barricade on May 21, when the roadway presented neither sand nor wooden barricade and thus led drivers to believe that it was open for normal use, plaintiff had entered and passed over the new roadway without incident as a passenger in another automobile. This circumstance supports the trial judge’s conclusion that plaintiff was not contributo-rily negligent in failing to see and stop for the sand barricade.
Perhaps $20,000 (including $2,385 medical expense) is toward the upper rather than the lower limit of the trial judge’s discretion for a broken nose with scarring in a 24-year-old woman, requiring future surgery to straighten the bone and reduce the scar, but we cannot say it transgresses that limit.
The question of liability as between contractor and subcontractor was incorrectly resolved. The subcontractor either had or did not have a contractual obligation towards the contractor to place lighted wooden or similar barricades. If it had such an obligation, it owes the contractor all, rather than half, of the damages its breach of that obligation caused. If it did not have such an obligation, it owes the contractor nothing. We conclude that the contractor did not carry its burden, as third-party plaintiff, to prove such an obligation.
The contractor’s president testified that he considered the replacement of the sand an “extra” not covered by the original contract, yet the contractor relies on language from the original contract (and from an unrelated letter) to oblige the subcontractor “to provide any and all signs, barricades, etc., which may be required to complete its items of work. . . .” The contractor agrees that every item of the subcontractor’s work under that contract had already been completed. Thus the subcontractor did not owe lighted, wooden barricading under the original contract. Considering especially the general impression from the contractor’s president’s testimony that the parish employee complaint that wood barricades were inadequate and insistance on a substantial sand or mud barricade, as well as the subcontractor’s president’s denial of an order for anything beyond the sand and his testimony that they never provided simple road barricades even during the contract, we conclude that the contractor did not prove by a preponderance of the evidence that the subcontractor was obliged towards the contractor to place a warning barricade before the sand.
Judgment on main demand affirmed and on third-party demand reversed at contractor’s cost.